M. J. FEDERMAN CO., INC., Plaintiff, *v.* THE AMERICAN INSURANCE COMPANY, Defendant.

First Department, December 7, 1934.

*Lucien Hilmer* of counsel [*Monroe Chapin* with him on the brief; *Parker, Chapin & Flattau*, attorneys], for the plaintiff.

*Gregory S. Rivkins* of counsel [*Barton P. Ferris* with him on the brief; *Hill & Rivkins*, attorneys], for the defendant.

TOWNLEY, J. This submission is to determine as to the right of plaintiff to recover $4,190.13 for loss of certain merchandise by theft which was allegedly covered by defendant's policy of insurance. The policy, in so far as it is relevant to this case, reads as follows:

" 3. Covering in the United States and/or Canada, in custody of (as carrier, bailee, warehousemen or otherwise) Railroads, Express, Motor Transportation Companies, * * * Licensed Public Truckmen, Public Truckmen, Trucks of the assured * * * and/or other Common Carrier and Land Conveyances incidental to any of the above or otherwise * * *.

" 4. To cover all loss and/or damage caused by * * * Theft * * * from the time of leaving the Warehouse, Store or Factory of Shipper until safely delivered into Warehouse, Store or Factory of Consignee."

The question is whether the loss by theft occurred while the property was in the custody of a common carrier within the meaning of the protection of this policy or whether it occurred after the merchandise was safely delivered to the assured's agent.

Plaintiff purchased certain merchandise in Illinois. The seller shipped the goods by interstate public truckmen, consigned to the plaintiff at New York city. A truck of one company carried the goods to Buffalo where the merchandise was transferred to a truck of the Empire Haulage Corporation, also a common carrier. The Empire Haulage Corporation brought the goods to the premises of the plaintiff located on the second floor of 115 Fifth avenue on Saturday, April 22, 1933, a few minutes before noon. The driver of the truck spoke to plaintiff's receiving and shipping clerks and requested them to accept delivery. The closing time at the plaintiff's premises was twelve o'clock noon. It was decided not to receive the merchandise into the premises at that hour. Lawrence, the shipping clerk, telephoned the New York office of the Empire Haulage Corporation and inquired whether the carrier could hold and keep the merchandise until the following Monday morning, April 24, 1933. The carrier said that it would hold the merchandise at a charge of twelve dollars. One Taig, the president of the Broadway Local Express Company, Inc., a local common carrier who had done all local trucking required by the plaintiff for many years, was present at the plaintiff's premises at the time of the arrival of the goods. The shipping clerk then asked Taig if his company could receive and hold the goods until Monday morning. Taig agreed to do this for six dollars. Plaintiff then directed the Empire Haulage Corporation to turn over this merchandise to the Broadway Local Express Company, Inc., and a receipt for the merchandise was filled out by plaintiff and executed by the Broadway Local Express Company, Inc., in favor of the plaintiff and delivered to plaintiff.

The Empire Haulage Company delivered the goods to the Broadway Local Express Company on the street at Nineteenth street and

Fifth avenue. The goods were put into another truck and driven to Prince's Garage, a public garage, on East Nineteenth street, where it was parked and left against the rear wall. Nobody was left by Taig to watch the goods. No one on behalf of the plaintiff specifically agreed with Taig where the goods would be kept. The plaintiff did know that Taig's company maintained a warehouse at 409 East Twenty-fourth street, suitable for warehousing. On the night of April 22, 1933, Prince's Garage was entered and robbed. None of the goods has ever been recovered.

The question in this case is whether the owner of goods under the particular circumstances has taken the freight into his own care and possession or its equivalent, or whether he has waived the necessity for delivery to his own warehouse or shop. (*Strong v. Natally*, 127 Eng. Rep. 362; 1 Bos. & Pul. [N. R.] 16 [1804]; *Houlder Brothers & Co. v. Merchants Marine Ins. Co., Ltd.*, L. R., 17 Q. B. D. 354; 6 Asp. Mar. L. Cas. 12 [Ct. of App.].)

According to the submission, plaintiff's contract with Taig involved Taig's agreement to " hold the merchandise abovementioned until the following Monday morning, April 24, 1933." Plaintiff also " did not know where its merchandise was to be kept and held, nor did it make any inquiry as to where the goods were to be kept and held by the Broadway Local Express Company, Inc. * * * Lawrence assumed that the plaintiff's merchandise here in question would be held at said warehouse operated and maintained by the Broadway Local Express Co., Inc. Neither Lawrence nor Gold [the other clerk] ever heard of Prince's Garage until after the robbery and theft."

We think that on these agreed facts it was manifestly the intention of the buyer not to receive the goods into its own custody prior to the following Monday morning and that the goods were protected from loss by the policy so long as they were in the possession, constructive or actual, of the Broadway Local Express Company, Inc. The transfer from Empire Haulage Corporation to the Broadway Local Express Company, Inc., did not constitute acceptance of the goods, but was simply a transfer of custody from one carrier to another pending delivery on Monday morning.

Judgment is directed for plaintiff, without costs.

FINCH, P. J., MERRELL, GLENNON and UNTERMYER, JJ., concur.

Judgment directed in favor of the plaintiff, without costs. Settle order on notice.